No. 24-2494

*In the*

**United States Court of Appeals**

*For the*

**Ninth Circuit**

═══════════════════════════════

BRENDAN PEACOCK,
*Plaintiff and Appellant*,

*vs.*

PABST BREWING COMPANY, LLC
*Defendant and Appellee.*

═══════════════════════════════

APPEAL FROM THE ORDERS OF THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA
No. 2:18-cv-00568-DJC-CKD
HON. DANIEL J. CALABRETTA, DISTRICT JUDGE

═══════════════════════════════

**APPELLEE'S ANSWERING BRIEF**

═══════════════════════════════

OREN BITAN
MARK T. CRAMER
JESSICA M. HAWK
BUCHALTER, A PROFESSIONAL CORPORATION
1000 WILSHIRE BOULEVARD, SUITE 1500
LOS ANGELES, CALIFORNIA 90017
(213) 891-0700 | FAX (213) 8960400 | EMAIL OBITAN@BUCHALTER.COM
*Appellate Counsel for Defendant and Appellee*
PABST BREWING COMPANY, LLC

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

Defendant and Appellee PABST BREWING COMPANY, LLC (PABST) hereby

files its corporate disclosure statement as follows. Pabst's parent company is Pabst

Holdings, LLC, and no publicly held corporation owns 10% or more of its stock.

Dated: October 9, 2024

Respectfully submitted,
BUCHALTER
A PROFESSIONAL CORPORATION

By: _/s/ Oren Bitan_____
     Oren Bitan

*Attorneys for Defendant and Appellee*
PABST BREWING COMPANY, LLC

ii

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ...................................................... ii

TABLE OF CONTENTS ................................................................ iii

TABLE OF AUTHORITIES ............................................................... v

INTRODUCTION ................................................................... 1

ISSUES PRESENTED ................................................................ 3

STATEMENT OF THE CASE ............................................................ 4

    I.    The Challenged Olympia Beer Label Aspects ..................................... 4

    II.   Pabst Removes the "It's the Water" Slogan From the Olympia Beer Label in 2020 ................................................................... 4

    III.  Pabst Discontinues Production of Olympia Beer Indefinitely in 2021 ........................................................................ 5

    IV.  Peacock Offers No Evidence to Support the Essential Elements of His Claim ................................................................... 5

    V.   Pabst's Affirmative Evidence Negates the Essential Elements of Peacock's Claim ................................................................ 9

    VI.  The District Court Denies Peacock's Motion for Class Certification ............................................................................... 12

    VII.  The District Court Grants Summary Judgment in Pabst's Favor ....... 13

SUMMARY OF THE ARGUMENT .................................................... 15

STANDARD OF REVIEW .............................................................. 18

ARGUMENT ......................................................................... 19

    I.    The District Court Correctly Entered Summary Judgment in Pabst's Favor. ..................................................................... 19

A.     Peacock Has No Evidence That the Challenged Label Aspects Are Likely to Deceive a Reasonable Consumer. ........20

B.     The Unrebutted Evidence Shows that the Challenged Label Aspects Are Not Likely to Deceive Consumers. ....................26

II.     The District Court's Grant of Summary Judgment Can Be Affirmed on the Alternative Ground that Peacock Has No Evidence to Support an Award of Restitution Damages. ....................................27

A.     The Proper Measure of Restitution...........................................28

B.     Peacock Lacks Evidence of the Amount of Restitution He is Supposedly Owed. ...............................................................32

III.     The District Court Correctly Denied Class Certification. .................36

A.     Peacock Lacks Standing to Seek Injunctive Relief Because He Failed to Demonstrate an Imminent Threat of Future Injury. ....................................................................................36

B.     Peacock's Claim for Injunctive Relief is Moot Because There is No Reasonable Expectation of Future Harm.......................42

IV.     The District Court's Order Denying Class Certification Can Be Affirmed on the Alternative Ground That Peacock Failed to Demonstrate a Class Can Be Maintained Under Ruler 23(b)(2). .......45

CONCLUSION ..................................................................................................46

STATEMENT OF RELATED CASES................................................................47

CERTIFICATE OF COMPLIANCE...................................................................48

CERTIFICATE OF SERVICE............................................................................49

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*,
    2020 WL 3893395 (E.D. Cal. July 10, 2020) ...................................................31

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007)...............................................................................36

*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014).............................................................................18

*Brazil v. Dole Packaged Foods, LLC*,
    660 F. App'x 531 (9th Cir. 2016)........................................................... 16, 29, 30

*Bruton v. Gerber Prods. Co.*,
    2018 WL 1009257 (N.D. Cal. Feb. 13, 2018) ...........................................41, 42

*Chowning v. Kohl's Dep't Stores, Inc.*,
    735 F. App'x 924 (9th Cir.), *amended on denial of reh'g*, 733 F.
    App'x 404 (9th Cir. 2018)....................................................................29, 30, 32

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008)........................................... 15, 20, 21, 23, 25, 26

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663 (2006).............................................................................32

*County of Los Angeles v. Davis*,
    440 U.S. 625 (1979)............................................................................................43

*Culver v. Unilever United States, Inc.*,
    2021 WL 2943937 (C.D. Cal. June 14, 2021) ...................................................38

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018)................................................... 36, 37, 40, 42, 44

*Desai v. Deutsche Bank Sec. Ltd.*,
    573 F.3d 931 (9th Cir. 2009)...............................................................................18

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001)..........................................................................25

*DZ Rsrv. v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024)..........................................................................37

*Ewert v. eBay, Inc.*,
    602 F. App'x 357 (9th Cir. 2015).....................................................................28

*In re Facebook, Inc., PPC Advertising Litig.*,
    2012 WL1253182 (N.D. Cal. Apr. 13, 2012) ......................................16, 30, 32

*Greenberg v. Target Corp.*,
    985 F.3d 650 (9th Cir. 2021)...........................................................................18

*Haskell v. Time, Inc.*,
    965 F. Supp. 1398 (E.D. Cal. 1997) ...............................................................20

*Hodgers–Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999).........................................................................36

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................28, 30

*Lanovaz v. Twinings N. Am., Inc.*,
    2016 WL 4585819 (N.D. Cal. Sept. 2, 2016) ............................................38, 39

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003).................................................. 1, 20, 22, 23, 27

*Microsoft Corp. v. Baker*,
    582 U.S. 23 (2017)..........................................................................................18

*N. Mariana Islands v. United States*,
    399 F.3d 1057 (9th Cir. 2005).........................................................................18

*Nelsen v. King Cnty.*,
    895 F.2d 1248 (9th Cir. 1990)...................................................................18, 37

*In re O'Brien*,
    312 F.3d 1135 (9th Cir. 2002).........................................................................19

*Pardini v. Unilever United States, Inc.*,
  2021 WL 8153616 (N.D. Cal. Sept. 27, 2021) ..................................................38

*Philips v. Ford Motor Co.*,
  2017 WL 635469 (N.D. Cal. Feb. 16, 2017) .....................................................28

*Poland v. Liberty Mut. Fire Ins. Co.*,
  2014 WL 334184 (E.D. Cal. Jan. 29, 2014) ................................................30, 32

*Ries v. Arizona Beverages USA LLC*,
  2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)............................................28, 35

*Schramm v. JPMorgan Chase Bank, N.A.*,
  2014 WL 12633527 (CD. Cal. July 10, 2014)............................................21, 25

*Sekiya v. Gates*,
  508 F.3d 1198 (9th Cir. 2007)..........................................................................19

*Tamburri v. SunTrust Mortg., Inc.*,
  623 F. App'x 878 (9th Cir. 2015).....................................................................33

*In re Tobacco Cases II*,
  240 Cal. App. 4th 779, 794 (2015)............................................................29, 31

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .....................................................................................28

*Tran v. Sioux Honey Ass'n, Coop.*,
  471 F. Supp. 3d 1019 (C.D. Cal. 2020) ...........................................................22

*Trew v. Volvo Cars of N. Am., LLC*,
  2006 WL 306904 (E.D. Cal. Feb. 8, 2006).......................................................31

*United States v. Est. Pres. Servs.*,
  38 F. Supp. 2d 846 (E.D. Cal. 1998), *aff'd*, 202 F.3d 1093 (9th Cir.
  2000) .................................................................................................................43

*United States v. W. T. Grant Co.*,
  345 U.S. 629 (1953)..........................................................................................43

*Victor v. R.C. Bigelow*,
  2016 WL 4502528 (N.D. Cal. Aug. 29, 2016), *aff'd,* 708 F. App'x
  333 (9th Cir. 2017)....................................................................... 20, 21, 28, 35

vii

*Villiarmo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ................................................................. 21, 25

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ................................................................. 16, 28

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................... 46

*Weinberg v. Whatcom Cnty.*,
    241 F.3d 746 (9th Cir. 2001) ........................................................................ 27

*Williams v. Gerber Prods.*,
    552 F.3d 934 (9th Cir. 2008) .......................................................................... 1

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................ 1

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 1

Fed. R. Civ. P. 23(b)(2) ........................................ 3, 5, 12, 16, 17, 36, 40, 42, 45, 46

Fed. R. Civ. P. 26 ............................................................................................. 6, 34

Fed. R. Civ. P. 26(a)(1)(A)(iii) ............................................................................. 6

Fed. R. App. P. 28(a)(8)(A) ................................................................................ 19

# INTRODUCTION

Plaintiff Brendan Peacock—a serial plaintiff who routinely sues food and beverage companies for alleged false advertising—filed this lawsuit claiming that defendant Pabst Brewing Company, LLC deceives consumers into believing that its Olympia Beer product is brewed exclusively with artesian spring water from a specific location in Olympia, Washington. Peacock brought a single claim under California's Unfair Competition Law (UCL, Cal. Bus. & Prof. Code § 17200) on behalf of a putative class, for which he bore the burden of proving that the Olympia Beer label was likely to deceive a "reasonable consumer," meaning a "significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *See Williams v. Gerber Prods.,* 552 F.3d 934, 938 (9th Cir. 2008); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). He did not come close to meeting this burden. The problem that has plagued Peacock throughout the life of this case is that his claim suffers from a fatal lack of proof. Peacock failed to provide evidence of the essential elements of his claim, and Pabst's affirmative evidence negates the essential elements of his claim. For these reasons, Peacock failed to satisfy Rule 23 of the Federal Rules of Civil Procedure and failed to survive summary judgment.

Peacock recognized that he could not obtain class-wide damages because of his lack of evidence of class-wide deception and economic injury (and Pabst's

affirmative evidence to the contrary), and abandoned all claims for monetary relief on behalf of the putative class. Instead, Peacock sought <u>only</u> class-wide injunctive relief. The district court correctly denied Peacock's motion for class certification because Peacock lacks standing to seek injunctive relief. Peacock could not show the real and immediate threat of future injury necessary to establish standing to seek injunctive relief because the allegedly misleading slogan was removed from the Olympia Beer label, and Pabst discontinued production of the beer indefinitely in 2021 (for reasons that had nothing to do with this lawsuit).

After the district court denied Peacock's motion for class certification, Pabst moved for summary judgment on Peacock's sole remaining individual claim. The district court correctly granted summary judgment in Pabst's favor because Peacock "failed to present any evidence from which the Court [could] find that a reasonable consumer is likely to be deceived by Defendant's marketing of Olympia Beer," and Pabst offered evidence of "substantial strength" indicating that the Olympia Beer label is *not* misleading to the reasonable consumer. ER-157, 163. Even in the unlikely event the district court's well-reasoned order denying class certification were reversed, it would be of no help to Peacock, because he cannot prove the essential elements of his individual claim.

Peacock identifies no error in the district court's denial of class certification or its grant of summary judgment in favor of Pabst, which should each be affirmed.

2

## ISSUES PRESENTED

1.      Whether the district court correctly granted summary judgment for Pabst because Peacock failed to provide any evidence that the Olympia Beer label is likely to deceive a reasonable consumer, and Pabst provided affirmative evidence of "substantial strength" indicating that the Olympia Beer label is not likely to deceive consumers.

2.      Whether the district court's grant of summary judgment in Pabst's favor should be affirmed on the alternative ground that Peacock failed to provide any evidence to support an award of restitution damages.

3.      Whether the district court correctly denied Peacock's motion to certify an injunctive-relief only class under Federal Rule of Civil Procedure 23(b)(2) on the ground that Peacock cannot show a real and immediate threat of repeated harm to confer injunctive relief standing, because the allegedly misleading slogan was removed from all Olympia Beer labeling and marketing and the beer has been discontinued and is no longer on the market.

4.      Whether the district court's order denying class certification should be affirmed on the alternative ground that Peacock failed to demonstrate that a class can be maintained under Rule 23(b)(2) because there is no evidence that the Olympia Beer label is likely to deceive a reasonable consumer, and Pabst's

affirmative evidence shows that the Olympia Beer label is not likely to deceive consumers.

## STATEMENT OF THE CASE

### I. The Challenged Olympia Beer Label Aspects

Peacock challenges three specific aspects of the Olympia Beer label: (1) the phrase, "The Original"; (2) the slogan, "It's the Water"; and (3) the artistic rendering of a waterfall (each a "Challenged Label Aspect," and together, the "Challenged Label Aspects"). ER-37 at ¶ 25; ER-70–71. Peacock argues that the Challenged Label Aspects deceive consumers into believing that Olympia Beer is exclusively brewed using artesian spring water from Olympia, Washington, in violation of California's UCL. ER-69. Peacock argues this deception is primarily caused by the phrase "It's the Water" on the Olympia Beer label. ER-75. According to Peacock, "had Defendant not engaged in the false and misleading advertising tactics, Peacock [] would have paid less for the beer because Defendant would not have been able to charge [] a premium for the product." ER-40 at ¶ 44.

### II. Pabst Removes the "It's the Water" Slogan From the Olympia Beer Label in 2020

In or around the spring of 2020, Pabst submitted an application to the Alcohol Tax and Trade Bureau to change the Olympia Beer label to remove the "It's the Water" slogan from the label. 2-SER-270–71; 2-SER-260 at ¶ 9. On May 11, 2020, the Alcohol Tax and Trade Bureau approved this label change, rendering

4

all prior versions of the label "obsolete." *Id*. Thereafter, Olympia Beer labels did not bear the "It's the Water" slogan. 2-SER-260 at ¶ 9. Pabst certified that it will not use the "It's the Water" slogan on any packaging, labeling, advertising, or marketing material associated with Olympia Beer in the future. ER-143–44 at ¶ 5.

## III. Pabst Discontinues Production of Olympia Beer Indefinitely in 2021

In or around January 2021, Pabst discontinued production of Olympia Beer indefinitely. ER-143 at ¶¶ 2–3. This business decision was based entirely on the declining demand for Olympia Beer and corresponding low sales numbers, and had nothing to do with this lawsuit. ER-143 at ¶ 2.

## IV. Peacock Offers No Evidence to Support the Essential Elements of His Claim

After two phases of discovery spanning nearly two years, Peacock never designated any expert witness, never conducted any survey of purchasers, never provided any market research, and never provided any anecdotal evidence to show that a *single* consumer other than Peacock himself was deceived by the Olympia Beer label. 1-SER-70–71 at ¶¶ 7, 15, 17; *see* 2-SER-333–34; 1-SER-250–51. Peacock offered no evidence to show how *any other consumer* interpreted the Challenged Label Aspects, a probability that *any other consumer* shares the same (unreasonable) interpretation of the beer label as Peacock, or that the Challenged Label Aspects factored into *any other consumer's* purchasing decision. 1-SER-70–71 at ¶¶ 7, 15, 17.

5

Separately, Peacock offered no evidence to show that he suffered economic injury, much less any evidence that would allow a trier of fact to calculate an award in his favor. For example, Peacock's initial disclosures failed to identify a "computation of each category of [relief]" he seeks, or "documents or other evidentiary material on which each computation is based," despite his obligations under Rule 26 and Pabst's repeated requests for this information. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); 1-SER-82; 1-SER-70 at ¶¶ 11–12; 1-SER-87–89; 1-SER-99–100; 1-SER-154; 1-SER-159; 1-SER-201; *see also* 1-SER-62–63 at ¶ 5. Peacock likewise failed to provide this information in response to Pabst's discovery requests. SER-70 at ¶ 12; 1-SER-87–89; 1-SER-62–63 at ¶ 5. For example, Pabst served a special interrogatory asking Peacock to "[d]escribe in detail how [Peacock] calculate[s] all monetary relief [he] seek[s] in this action." 1-SER-87. Peacock objected to this interrogatory, including "insofar as it calls for a legal conclusion or an expert opinion on damages," because "[Peacock] is not an attorney nor an expert on damages." 1-SER-87–89. But Peacock has never provided any expert opinion on damages or any other issue in this case. SER-70–71 at ¶ 15. Peacock's response also referred to the allegations in his complaint, and stated that he would supplement his response "at the proper procedural time." 1-SER-87–89; 1-SER-62–63 at ¶ 5. But he never did. SER-70–71 at ¶ 12.

6

Peacock testified that when he buys beer from the store, he "almost always" keeps the receipt, and keeps the receipts "typically for a long time . . . five years up to indefinitely." 1-SER-215–217 [Peacock Dep. 92:18–93:17; 93:24–94:2]. But he produced only *one* receipt in this case evidencing a single purchase of a single six-pack of sixteen-ounce Olympia Beer for $4.99. 1-SER-70 at ¶ 6; 1-SER-78; 1-SER-220–21 [Peacock Dep. 110:4–111:15]. When asked at deposition, "How many times total in your lifetime have you purchased Olympia Beer?" Peacock testified, "I'm not sure, but many." When asked for a ballpark estimate, he testified: "I'm only estimating, and it's not reliable, should not be relied upon. But probably over two hundred." He testified that he has purchased Olympia Beer "over approximately the last 20 years." 1-SER-219–20 [Peacock Dep. 109:13–110:3]. Despite Peacock's alleged 20-year history of drinking Olympia Beer, personal practice of always keeping his beer receipts, and personal history of regularly suing food and beverage companies, the only reliable evidence of *any* purchase of Olympia Beer Plaintiff has ever made is a single receipt from April 21, 2017 reflecting his purchase of a six-pack for $4.99. 1-SER-70 at ¶ 6; 1-SER-78; 1-SER-220–21 [Peacock Dep. 110:4–111:15]. Therefore, by Peacock's own admission, there is no other reliable evidence in the record from which to quantify the number of Peacock's purchases of Olympia Beer during the class period, or the

7

amounts he paid—much less the amount of the "premium" he allegedly paid for Olympia Beer. *Id*.; ER-37–38 at ¶ 26.

Peacock has never indicated the dollar amount of his purchase that he attributes to Pabst's alleged misrepresentations regarding Olympia Beer, despite his complaint's allegations that he paid a "premium" for the beer "compared to other beer and related goods." 1-SER-70 at ¶ 12; ER-37–38 at ¶ 26. Nor did Peacock recall "what prices other beers were being sold at" during the time of his purchase, or whether he compared any other beers to Olympia Beer before purchasing Olympia Beer. 1-SER-226 [Peacock Dep.116:8-21]; 1-SER-62–63 at ¶ 5.

When asked at deposition what price Peacock feels he should have paid for the six-pack of Olympia Beer, he testified: "**I don't know**." 1-SER-226–27 [Peacock Dep.116:22–117:1]; 1-SER-62–63 at ¶ 5. When asked at deposition, **"**How much more did you pay for Olympia Beer than you would have if you knew it wasn't brewed with artesian spring water from Tumwater?" Peacock testified: "**I don't know**." SER-227 [Peacock Dep. 117:7–10]. When asked at deposition how he calculates the "price premium" as alleged in his complaint, Peacock testified: "I don't calculate the price premium. I think that would take exhaustive market research which I haven't done." 1-SER-224 [Peacock Dep. 114:4–14]. But

8

Peacock has never provided any such market research or any other evidence in support of a calculation of a monetary award in his favor. 1-SER-70 at ¶¶ 7, 12.

## V.     Pabst's Affirmative Evidence Negates the Essential Elements of Peacock's Claim

Pabst offered evidence showing that the Challenged Label Aspects are neither deceptive nor material to consumers' purchasing decisions. *See, e.g.*, 2-SER-308 at ¶¶ 58–59. Pabst's expert witness, Dr. Kent Van Liere, a consumer survey and market analysis expert, designed and conducted an online consumer survey of past purchasers of Olympia Beer to test consumer interpretation and the alleged "likelihood of deception" of the Challenged Label Aspects. *See* 2-SER-283–84 at ¶¶ 8–10; 1-SER-61 at ¶ 2.

Based on the consumer survey evidence, Dr. Van Liere concluded: "*[T]here is no meaningful evidence that purchasers in the relevant population are misled by the elements of the Olympia beer label that Plaintiff claims are misleading, or that these challenged elements influenced consumer decisions to purchase the product at issue in this matter*." 2-SER-308 at ¶ 58. "*Specifically, neither the phrases 'The Original,' or 'It's the Water,' nor the picture of the waterfall under the horseshoe graphic on the Olympia Beer label cause consumers to believe that the beer is brewed using artesian water from the Olympia area of Washington State. Further, no meaningful number of putative class members' purchasing decisions are affected by a perception that the water used to brew Olympia Beer is from the*

9

*Olympia area of Washington State*." *Id.* at ¶ 59. Peacock has never challenged the survey design, the survey findings, or Dr. Van Liere's conclusions, and never even attempted to depose Dr. Van Liere. 1-SER-71 at ¶ 16.

The survey included two different images: (1) an image of a sixteen-ounce Olympia Beer can as it appeared during the class period, including each of the Challenged Label Aspects (the "Test Condition"); and (2) an image of the same Olympia Beer can with all of the Challenged Label Aspects *removed* (the "Control Condition"). 1-SER-285. Survey respondents were randomly shown either the Test Condition or the Control Condition, and were then asked a series of open-ended and close-ended questions. *Id.*; 2-SER-303–304 at ¶ 48. The survey results showed that the Challenged Label Aspects "*d[id] not cause consumers to believe that the water used to brew the beer is artesian water from Olympia, Washington.*" 2-SER-285–86. Respondents were asked a specific closed-ended question whether or not they thought Olympia Beer was brewed with artesian spring water from Olympia Washington. For the consumers who reported that they believed the beer was brewed with artesian spring water from Olympia, the Challenged Label Aspects were not the cause—the results were nearly the same in both the Test and Control Conditions. *Id.*; 2-SER-305 at Table 4.

To test whether the Challenged Label Aspects factored into consumers' purchasing decisions, Dr. Van Liere's consumer survey measured the reasons for

10

consumers' purchases of Olympia Beer. 2-SER-300 at ¶ 41. Consumers were asked in open-ended questions why they initially purchased Olympia Beer, and why they continued to purchase it, if applicable. *Id*. There was no limitation on how a consumer could respond. 2-SER-300–301 at ¶¶ 42–43. *Not one* respondent initially purchased Olympia Beer because they thought the product was brewed with water from the Olympia area of Washington State. 2-SER-284–86 at ¶ 11; 2-SER-301–302 at ¶ 44. Not one survey respondent mentioned *anything* about the source of the water or the taste of the water used to brew Olympia Beer as a reason for initially purchasing the beer. *Id*. at ¶¶ 11, 44; 2-SER-301 at Table 2. Only *one* respondent mentioned the origin of the water as a reason why this respondent continued to purchase the beer. *Id*. at ¶¶ 11, 46; 2-SER-302 at Table 3. In short, virtually no respondents purchased Olympia Beer because of *any* perception regarding the water used to brew the beer. *See id*. As such, Dr. Van Liere concluded, "*there is no meaningful evidence that putative class members' decisions to purchase the product are impacted by any misconception about where the water used to brew the beer is from*." 2-SER-286 at ¶ 12.

In sum, the only evidence in the record of consumers' interpretations of the Olympia Beer label shows that the Challenged Label Aspects are neither deceptive nor material to consumers' purchasing decisions. 1-SER-70 at ¶ 7; 2-SER-308 at ¶¶ 58–59.

11

## VI. The District Court Denies Peacock's Motion for Class Certification

On September 30, 2021, Peacock moved for class certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); ER-147. Rule 23(b)(2) certification "'is appropriate only where the primary relief sought is declaratory or injunctive.'" ER-147 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)).

On June 15, 2022, the district court denied Peacock's motion for class certification based on lack of standing to seek injunctive relief, reasoning that "Plaintiff lacks the real and immediate threat of repeated injury to establish standing because Defendant's Olympia Beer has been discontinued and the misleading slogan officially removed in accordance with the Tax and Trade Bureau." ER-148–50. Accordingly, the district court found that Peacock "does not face an action or imminent threat of future harm because the source of potential harm, namely [Defendant's advertising and labeling], has ceased." ER-149 (citing *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257 at *6 (N.D. Cal. Feb. 13, 2018)). The district court considered and rejected Peacock's argument that he is entitled to

12

seek injunctive relief because Pabst may continue to sell the product in the future. ER-149.

## VII.  The District Court Grants Summary Judgment in Pabst's Favor

After the district court's denial of class certification, Pabst moved for summary judgment on Peacock's sole remaining individual claim on the basis that Peacock lacks evidence of the essential elements of his claim, and Pabst's affirmative evidence negates the essential elements of his claim. ER-151. The district court agreed with Pabst and entered summary judgment in Pabst's favor. ER-158–60, 163.

The district court evaluated the three pieces of evidence that Peacock cited to support his argument that reasonable consumers were deceived by the Olympia Beer label: (1) "historical" brand references described by Pabst's witness; (2) the labeling and marketing of the beer itself; and (3) Peacock's own testimony. The district court determined that none of this evidence—either together or in isolation—helped Peacock meet his burden to show that the Olympia Beer label is misleading to the reasonable consumer. ER 161–63.

*First*, the district court found that Pabst's testimony about the "historical reference" of the "It's the Water" slogan did "nothing" to help Peacock meet his burden to present evidence that the beer label had a "'likelihood' of confounding

an appreciable number of reasonably prudent purchasers exercising reasonable care." ER-162.

*Second*, the district court found that the content of the Olympia Beer label and marketing of the beer itself might be "relevant background information," but likewise "[did] not help Plaintiff meet his burden to satisfy the reasonable consumer test." *Id*.

*Third*, the district court found that Peacock's own testimony about his personal experience and belief he was misled could not satisfy the reasonable consumer test on its own, because it represents only a single, isolated example of a consumer being deceived. ER-162. The district court noted that the insufficiency of Peacock's evidence is particularly acute because Pabst "presented evidence of substantial strength in the form of a consumer survey and the opinions of a purported expert, which suggest that the elements of the Olympia Beer label highlighted by Plaintiff were not misleading to the reasonable consumer." ER-162–63. "[Peacock]'s testimony alone would already be insufficient to meet his burden and the sufficiency of that evidence is even further degraded by the evidence presented by Defendant, such that no reasonable trier of fact could reach a contrary conclusion." ER-163.

Peacock's failure to present any evidence to meet the reasonable consumer test—an essential element of his claim—meant that the district court did not need

14

to reach the issue of whether Peacock provided sufficient evidence that he was entitled to restitution damages. *Id.*

## SUMMARY OF THE ARGUMENT

**I.** The district court correctly granted summary judgment in Pabst's favor because Peacock has no proof that the Challenged Label Aspects are likely to deceive a reasonable consumer—an essential element of his claim. Peacock's failures are not for lack of opportunity. Peacock never designated any expert witness, never conducted a survey of consumers who purchased Olympia Beer, never provided any market research, and never provided any other evidence to show that a single other consumer was deceived by the Olympia Beer label. 1-SER-70–71 at ¶¶ 7, 15, 17. Further, in contrast to Peacock's lack of evidence, Pabst's consumer survey evidence and expert witness findings disproved Peacock's claim that consumers are deceived by the Olympia Beer label. 2-SER-308 at ¶¶ 58–59. Pabst's affirmative evidence shows that the Challenged Label Aspects do *not* mislead consumers, nor do they factor into consumers' purchasing decisions. *See id*. Peacock's claim fails because he has no evidence of deception other than his own self-serving testimony, which is insufficient as a matter of law. *See, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008).

**II.** The district court's grant of summary judgment can be affirmed for the alternative reason that Peacock has no evidence of economic injury—also an

15

essential element of his individual claim—much less any evidence that would allow the trier of fact to calculate a monetary award in his favor. The only measure of restitution available to Peacock is the "premium" he alleges he paid for Olympia Beer based on the Challenged Label Aspects, and this measure must be based on a specific amount found due and owing, and "must be supported by substantial evidence." *See, e.g.*, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016); *In re Facebook, Inc., PPC Advertising Litig.*, 2012 WL1253182 at *16 (N.D. Cal. Apr. 13, 2012). The only evidence of Peacock's purchase is a single receipt for a single six-pack of beer for $4.99, and Peacock failed to provide any reliable evidence of any other purchases of Olympia Beer during the class period. 1-SER-70 at ¶ 6. But even if he *could* offer reliable evidence of any additional purchases of Olympia Beer during the statutory period, he failed to establish what portion of the amounts he paid, if any, was attributable to Pabst's alleged deception. 1-SER-70 at ¶ 12. Stated another way, Peacock has zero evidence to support the alleged "price premium" he paid for Olympia Beer as alleged in his complaint. ER-37–38 at ¶ 26; ER-40 at ¶ 44. This failure is an independent and sufficient basis to affirm the district court's grant of summary judgment.

    **III.** The district court correctly denied certification of an injunctive relief class under Rule 23(b)(2) because Peacock lacks standing to seek injunctive relief,

a prospective remedy, as there is no likelihood of imminent future harm to Peacock and his claim is moot. Peacock admits that "the precise injunctive relief he seeks" is elimination of the "It's the Water" slogan from the Olympia Beer label—which has already occurred. ER-75; 2-SER-260 at ¶ 9, 2-SER-270–71. Further, Olympia Beer was discontinued over three-and-a-half years ago due to declining demand and low sales numbers (ER-143 at ¶¶ 2–3), and Pabst has certified that it will not use the "It's the Water" slogan in association with Olympia Beer in the future. ER-143–44 at ¶ 5.

Peacock now argues—for the first time on appeal—that Pabst's "voluntary cessation" of the challenged conduct does not moot his case. But Peacock's attempt to side-step his affirmative evidentiary burden to prove standing to seek a class-wide injunction fails because the record reflects irrefutable and total cessation of the challenged conduct that will not recur in the future. Peacock's bid for class-wide injunctive relief is nothing more than a transparent, last-ditch attempt to obtain some form of relief that he can use to seek attorneys' fees for Peacock's counsel.

**IV.** The district court's denial of class certification can be affirmed for the alternative reason that Peacock failed to carry his burden under Rule 23(b)(2) to show that an injunction would benefit the putative class. Peacock failed to provide any evidence that a *single* other class member was deceived by the Olympia Beer

17

label, *i.e.* there is no actionable conduct to warrant a class-wide injunction. An injunction would do *nothing* to benefit any putative class member because there is no evidence of a likelihood of deception, no threat of future harm, and no reasonable expectation the alleged wrong will be repeated.

## STANDARD OF REVIEW

An order granting summary judgment is reviewed *de novo* and may be affirmed on any ground supported by the record. *Greenberg v. Target Corp.*, 985 F.3d 650, 654 (9th Cir. 2021); *N. Mariana Islands v. United States*, 399 F.3d 1057, 1060 (9th Cir. 2005).

An order denying class certification "is subject to a very limited review and will be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 937 (9th Cir. 2009). The district court's discretionary determinations supporting the denial are also reviewed for abuse of discretion, and its factual findings are reviewed for clear error. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1066 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017). An order denying class certification may be affirmed on any ground supported by the record. *Berger* at 1066–67. A district court's decision on standing is reviewed *de novo*. *Nelsen v. King Cnty.*, 895 F.2d 1248, 1249 (9th Cir. 1990).

## ARGUMENT

### I. The District Court Correctly Entered Summary Judgment in Pabst's Favor.

Peacock's claim ultimately failed at summary judgment because the record contains no evidence that the Challenged Label Aspects are likely to deceive a reasonable consumer, and Pabst's unrebutted consumer survey evidence and expert witness findings show that the Challenged Label Aspects do *not* deceive consumers regarding the source of the water used to brew the beer. Peacock's opening brief fails to identify any error in the district court's order granting summary judgment for Pabst on this basis, and does no more than recycle the same thin, unsupported, and rejected arguments it made in opposition to Pabst's motion for summary judgment.[1]

---

[1] In line with the theme of this litigation, Peacock's opening brief fails to include a *single* citation to the record in support of his argument that there is a disputed issue of fact as to whether reasonable consumers were deceived by the Olympia Beer label. Op. Br. at pp. 12–13. There is only one record citation in the entire argument section of his brief. *See* Op. Br. at pp. 9–14. These deficiencies violate Federal Rule of Appellate Procedure 28(a)(8)(A): "When writing a brief, counsel must provide an argument which must contain 'appellant's contentions and the reasons for them, *with citations to the authorities and parts of the record on which the appellant relies*.'" *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) (per curiam) (citing Fed. R. App. P. 28(a)(8)(A) (emphasis added). Peacock's failure to include record citations in his argument section warrants striking his arguments in their entirety. *See In re O'Brien*, 312 F.3d 1135, 1136 (9th Cir. 2002) (striking brief and dismissing appeal for briefing inadequacies).

19

**A.** **Peacock Has No Evidence That the Challenged Label Aspects Are Likely to Deceive a Reasonable Consumer.**

As noted above, Peacock's UCL claim is governed by the "reasonable consumer" standard, under which Peacock bears the burden of demonstrating a probability "that a *significant portion of the general consuming public* or of targeted consumers, acting reasonably in the circumstances, could be misled" by the challenged labeling. *Lavie*, 105 Cal. App. 4th at 508 (emphasis added); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (plaintiff must produce evidence that shows "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care") (citing *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003)).

Many district courts within the Ninth Circuit have held that, to prevail on a mislabeling claim under the UCL, "a plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers." *See, e.g.*, *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997) (granting defendant's summary judgment motion as to the plaintiff's UCL claim because the plaintiff failed to provide consumer survey evidence and therefore failed to provide sufficient evidence to meet the reasonable consumer standard); *Victor v. R.C. Bigelow*, 2016 WL 4502528 at *4 (N.D. Cal. Aug. 29, 2016), *aff'd,* 708 F. App'x 333 (9th Cir. 2017) (stating that a plaintiff "must 'demonstrate by extrinsic evidence, such as consumer survey evidence, that

20

the challenged statements tend to mislead consumers'" and faulting plaintiff for presenting "no extrinsic evidence in support of his conclusory statement that Bigelow's claims are likely to mislead consumers"). While in some situations, "anecdotal evidence may suffice," evidence of just "a few isolated examples of actual deception are insufficient" to meet the reasonable consumer standard. *Clemens*, 534 F.3d at 1026.

In the Ninth Circuit, Peacock's own allegations and testimony about alleged deception, without more, are insufficient to survive summary judgment on a misrepresentation claim under the UCL. *See Clemens*, 534 F.3d at 1026 (plaintiff's claims of fraudulent conduct under the UCL failed where the plaintiff "offer[ed] only evidence concerning his personal experience," because "personal assumptions and expectations" are insufficient to show likelihood of deceiving a reasonable consumer). "[A] plaintiff does not carry the burden of demonstrating a likelihood 'of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care,' simply by describing his or her own personal, alleged misunderstanding or confusion." *Schramm v. JPMorgan* Chase *Bank, N.A.*, 2014 WL 12633527 at *10 (CD. Cal. July 10, 2014); *Victor*, 2016 WL 4502528 at *4 ("[I]ndividual testimony is insufficient to establish that a reasonable consumer is likely to be misled, as required under the reasonable consumer test."); *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (self-serving,

uncorroborated testimony is insufficient to create a genuine issue of material fact); *Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019, 1029 (C.D. Cal. 2020) (granting summary judgment where the only evidence plaintiff introduced was her personal view of the product labels).

Peacock argues—without any citations to the record—that there is "substantial evidence upon which the Court will answer the ultimate question" at trial. Op. Br. at p. 8. But to support his argument that the Olympia Beer label deceived consumers, Peacock again points generally to only three pieces of evidence: (1) the Challenged Label Aspects themselves; (2) Pabst's testimony regarding "historical" brand references (although Peacock's argument does not cite to any specific testimony); and (3) Peacock's "personal experience with the [allegedly] deceptive advertising" (though again, Peacock's argument does not cite to any specific testimony or allegations). This purported "evidence" does nothing to show a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508. Peacock does not otherwise identify the "substantial evidence" showing that the Challenged Label Aspects are likely to deceive the reasonable consumer because the evidence does not exist anywhere in the record. Peacock's generalized and unsupported assertions do not support his

claim and do not come close to satisfying his evidentiary burden, nor do they create a genuine issue of material fact.

*First*, images of the Olympia Beer can label and the fact that the cans were displayed to shoppers on store shelves do nothing to show a probability that a significant portion of reasonable consumers could be misled by the Challenged Label Aspects. *Lavie*, 105 Cal. App. 4th at 508. Peacock offers nothing—no consumer survey, no expert testimony, no market research or study, no declaration from a *single* other consumer—to show that his interpretation of the Olympia Beer can label equates to that of the reasonable consumer. 1-SER-70–71 at ¶¶ 7, 15–17. Peacock fails to show that the phrases "It's the Water" or "the Original" or the artistic rendering of a waterfall on the Olympia Beer label have fixed meaning uniformly interpreted by consumers. *See* 1-SER-70–71 at ¶¶ 7, 15–16. Not one of the Challenged Label Aspects is a statement of objective fact, and Peacock must provide *evidence* to *prove* his allegation that reasonable consumers *interpret* the Challenged Label Aspects to mean that Olympia Beer is brewed with artesian spring water from a specific geographic location. *Lavie*, 105 Cal. App. 4th at 508; *Clemens*, 534 F.3d at 1026. He has failed to do so, and Pabst's unrebutted consumer survey evidence—which Peacock has never attempted to challenge and does not even mention in his opening brief —shows the opposite. 2-SER-308 at ¶¶ 58–59; 2-SER-285–286; 1-SER-71 at ¶ 16.

23

*Second*, Peacock's generalized references to Pabst's testimony about the history of the beer and the "It's the Water" slogan do not come close to showing that the "reasonable consumer" is likely to be deceived by the Challenged Label Aspects. Pabst's testimony that the "It's the Water" slogan is a "historical reference to the brand" does not inform how reasonable consumers *interpret* the Challenged Label Aspects or hint at any deception.

Peacock also conveniently ignores Pabst's testimony that Pabst did *not* intend consumers to interpret the Olympia Beer label to mean that Olympia beer is brewed with artesian spring water from the Olympia area of Washington State. Pabst's witness gave no indication that any consumer interpreted the Challenged Label Aspects this way. 1-SER-23–24 [Pabst Dep. 56:13–57:19; 55:3–9]. Instead, Pabst's witness testified that she is unaware of any marketing studies or analyses of how consumers react to the "It's the Water" slogan; she does not know what a consumer thinks when they see the slogan, and that the interpretation would differ "depending on [the] person"; and she is unaware of any consumer comments regarding what consumers believe the slogan means. 1-SER-20–21; 1-SER-24–25 [Pabst Dep. 45:21–46:22; 56:13-57:19; *see also* 1-SER-26–28 [Pabst Dep. 64:20–65:1; 125:17–24].

As the district court correctly found, Pabst's testimony about the "historical reference" of the "It's the Water" slogan "does nothing" to help Peacock meet his

burden under the reasonable consumer test, because it does not establish a likelihood that reasonable consumers were likely to be deceived into believing that Olympia Beer is brewed with artesian spring water from a specific geographic location. ER-161–62.

*Third*, Peacock improperly points to his own allegations regarding his personal interpretation of the label, namely, that he was deceived into believing Olympia Beer is exclusively brewed with artesian spring water in Washington via the Challenged Label Aspects. *See, e.g.*, *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Fed. R. Civ. P. 56(e)) ("Once the moving party carries its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.'").

Peacock ignores the wealth of Ninth Circuit authority confirming that a plaintiff's own testimony and allegations are insufficient to show likelihood of deception under the reasonable consumer standard, and insufficient to survive summary judgment. *See, e.g.*, *Clemens*, 534 F.3d at 1026; *Schramm*, 2014 WL 12633527 at *10; *Villiarmo*, 281 F.3d at 106. Peacock's own self-serving allegations do not come close to satisfying his evidentiary burden, nor do they create a disputed issue of material fact.

25

The district court correctly found that the first two pieces of evidence "are not relevant to the reasonable consumer standard" and, therefore, "Plaintiff's testimony is the extent of Plaintiff's remaining evidence and the only anecdotal evidence of this sort presented," which "cannot meet the reasonable consumer standard on its own as it only represents an isolated example of a consumer being deceived." ER-162 (citing *Clemens,* 534 F.3d at 1026, *Schramm,* 2014 WL 12633527 at \*10).

At no point during the five-and-a-half year history of this case has Peacock managed to obtain *any* evidence to show how *any* consumer other than Peacock himself interprets the Olympia Beer can label. For example, Peacock failed to provide a single declaration from any other consumer to show that the Olympia Beer can label was misleading, though even that would be insufficient. 1-SER-70 at ¶ 7; *see, e.g.*, *Clemens*, 534 F.3d at 1026 ("[A] few isolated examples" of "anecdotal evidence" are "insufficient" to prove a likelihood of deception). Peacock's opening brief confirms that he cannot offer any foundation from which the district could conclude that a reasonable consumer would be misled by the Olympia Beer can labeling—an essential element of his claim.

### B. The Unrebutted Evidence Shows that the Challenged Label Aspects Are Not Likely to Deceive Consumers.

In contrast to Peacock's lack of evidence, Pabst affirmatively provided unrebutted evidence that the Challenged Label Aspects are not likely to deceive a

26

reasonable consumer, which negates an essential element of Peacock's case. *See, e.g.*, 2-SER-308 at ¶¶ 58–59. Accordingly, the *only* evidence in the record as to consumers' interpretations of the Challenged Label Aspects is Pabst's unrefuted consumer survey evidence that the Challenged Label Aspects are *not* likely to deceive consumers into believing Olympia Beer is brewed using artesian spring water from a specific location in Olympia, Washington. 1-SER-70–71 at ¶¶ 12, 15–17.

In sum, Peacock has failed to obtain any evidence to show that "it is probable that a significant portion of the consumer public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie,* 105 Cal. App. 4th at 507. Pabst's affirmative evidence shows the opposite. Because Peacock bears the ultimate burden at trial and failed to obtain any evidence in discovery from which judgment could be entered in his favor, he failed to create a material issue of fact. ER-163.

## II. The District Court's Grant of Summary Judgment Can Be Affirmed on the Alternative Ground that Peacock Has No Evidence to Support an Award of Restitution Damages.

While the district court did not need the reach the issue, Peacock's failure to "offer competent evidence of damages" also supports a grant of summary judgment. *Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 751–52 (9th Cir. 2001) ("We have observed that plaintiffs must provide evidence such that the [trier of

fact] is not left to speculation or guesswork in determining the amount of damages to award.") (internal quotation marks and citations omitted); *Ewert v. eBay, Inc.*, 602 F. App'x 357, 359 (9th Cir. 2015); *Victor*, 2016 WL 4502528 at *8 ("Bigelow is entitled to summary judgment on Victor's UCL claim on the basis that Victor has provided no evidence to support a showing of restitution damages."); *Ries v. Arizona Beverages USA LLC*, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) (granting summary judgment and decertifying class because named plaintiffs had no evidence of the amount of restitution to which they might be entitled); *Philips v. Ford Motor Co.*, 2017 WL 635469 at *11 (N.D. Cal. Feb. 16, 2017) ("Because damages are an essential element of each of Plaintiffs' claims, the finding that Plaintiffs have not presented a triable question of fact on the issue of damages is sufficient to justify granting Ford's motion for summary judgment in full.").

### A.    The Proper Measure of Restitution

The only remedies available to a private plaintiff under the UCL are restitution and injunctive relief. *See, e.g.*, *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). The measure of restitution Peacock is entitled to seek in this case is limited to the alleged "premium" Peacock paid based on his alleged mistaken belief that Olympia Beer was brewed using artesian spring water from Olympia, Washington. *See, e.g.*, *In re Vioxx Class Cases*, 180 Cal. App. 4th at 131 (explaining that

restitution is equal to "[t]he difference between what the plaintiff paid and the value of what the plaintiff received"); *Brazil*, 660 F. App'x at 534 (upholding the district court's limitation of damages under the UCL "to the difference between the prices customers paid and the value of the [product] they bought—in other words, the 'price premium' attributable to the product labels").

"Under these rules, a plaintiff cannot be awarded a full refund unless the product he purchased was worthless"—a claim Peacock does not make and cannot prove. *Id.*; *see In re Tobacco Cases II*, 240 Cal. App. 4th 779, 794 (2015); *Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x 924, 925 (9th Cir.), *amended on denial of reh'g*, 733 F. App'x 404 (9th Cir. 2018); ER 37-38 at ¶ 26 (alleging that "Plaintiff paid a premium price for the beer compared to other beer and related goods"); ER 40 at ¶ 44 ("Plaintiff . . . would have paid less for the beer because Defendant would not have been able to charge [] a premium for the product."). Indeed, Peacock testified that he enjoyed the taste of Olympia Beer after he first tasted it, and that he probably drank the entire six-pack of Olympia Beer reflected in the only receipt he produced. 1-SER-218, 235 [Peacock Dep. 99:10–12; 99:16–18; 143:5–24]. Therefore, he cannot reasonably dispute that he obtained some value from Olympia Beer (and in any event, he has failed to quantify it).

Contrary to Peacock's argument, Peacock is not legally entitled to seek disgorgement of Pabst's profits or revenues beyond restitution in the form of the

29

alleged "price premium." *Korea Supply Co.*, 29 Cal.4th at 1140 ("disgorgement of profits allegedly obtained by means of an unfair business practice" is not "an authorized remedy under the UCL"); *Brazil*, 660 F. App'x at 535 ("Contrary to Brazil's argument, a greater value than the price premium is not available to him and the proposed class under a theory of 'nonrestitutionary disgorgement.'"); *Chowning*, 735 F. App'x at 925 (same); *Poland v. Liberty Mut. Fire Ins. Co.*, 2014 WL 334184 (E.D. Cal. Jan. 29, 2014) (dismissing the plaintiff's request for disgorgement of the defendant's profits because it was an impermissible request for nonrestitutionary disgorgement).

In any event, Peacock's general references to "disgorgement of profits" are insufficient to put Pabst on notice of Peacock's theory of relief, and insufficient to meet his burden to demonstrate that "substantial evidence" supports a specific, measurable award in his favor. *See In re Facebook, Inc., PPC Advertising Litig.*, 2012 WL 1253182 at *16. Even at this late stage of the litigation, Pabst remains unclear as to Peacock's theory, methodology, calculation, or the amount of his claimed entitlement to disgorgement, or how this relates to the "price premium" he alleges he paid for Olympia Beer based on the alleged misrepresentations. *See* ER-37–38 at ¶ 26 (alleging that "Plaintiff paid a premium price for the beer compared to other beer and related goods"); ER 40 at ¶ 44 ("Plaintiff . . . would have paid

less for the beer because Defendant would not have been able to charge [] a premium for the product.").

Relatedly, it is unclear whether Peacock is arguing that he is entitled to seek *restitutionary* disgorgement of profits, which limits him to the alleged amount he lost in which he has an alleged ownership interest (*i.e.*, the specific amount he claims he overpaid for Olympia Beer based on the specific misrepresentation at issue). This is the same as restitution in the form of the "price premium." Indeed, Peacock's own authorities confirm this point: "Disgorgement is limited, however, to the premiums Aerojet paid directly to Global" based on the "false or deceptive premise." *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, 2020 WL 3893395 at *6 (E.D. Cal. July 10, 2020). "[D]isgorgement of profits is an available remedy for an individual private plaintiff under the UCL only to the extent that it constitutes restitution." *Id.* (citations and quotation marks omitted); *Trew v. Volvo Cars of N. Am., LLC*, 2006 WL 306904 at *2 (E.D. Cal. Feb. 8, 2006) ("A plaintiff may not recover non-restitutionary disgorgement of profits under the UCL."); *see also In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (2015) (Under California law, "there are two types of disgorgement: restitutionary disgorgement, which focuses on the plaintiff's loss, and non-restitutionary disgorgement, which focuses on the defendant's unjust enrichment"; non-restitutionary disgorgement is unavailable in

31

UCL actions); *Chowning*, 735 F. App'x at 925 (same); *Poland v. Liberty Mut. Fire Ins. Co.*, 2014 WL 334184 (E.D. Cal. Jan. 29, 2014) (same).

### B. Peacock Lacks Evidence of the Amount of Restitution He is Supposedly Owed.

The amount of restitution to be awarded under the UCL "must be supported by substantial evidence." *See In re Facebook, Inc., PPC Advertising Litig.*, 2012 WL 1253182 at *16 ("While restitution need not be determined with exact precision, it must be based on a specific amount found owing and this measurable amount of restitution due must be supported by substantial evidence.") (internal citations and quotation marks omitted); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 700 (2006) (stating the same, and reversing the trial court's award of restitution for lack of sufficient evidence, even though the plaintiff provided evidence of the market value of the products at issue as compared to the prices of similar products without the misrepresentation, and expert witness testimony). The trial court's authority to grant equitable relief "does not extend beyond the boundaries of the parties' evidentiary showing." *Id.*

Peacock has failed to set forth *any* evidence—much less the requisite "substantial" evidence—of the amount of restitution he believes Pabst owes him. As noted above, the *only* evidence of Peacock's purchase of Olympia Beer is a single receipt for a single six-pack that Peacock purchased on April 21, 2017 for $4.99, even though he testified that he "almost always" keeps his beer receipts, and

32

typically keeps them "for a long time . . . five years up to indefinitely." 1-SER-215–217 [Peacock Dep. 92:18–93:17; 93:24–94:2]; 1-SER-62 at ¶ 5. Peacock misrepresents the record where he states (without any citation to supporting evidence) that Peacock's "unrebutted testimony is that he purchased the product hundreds of times based on the false advertising." Op. Br. at p. 14. In reality, Peacock testified that he was "not sure" how many times he has purchased Olympia Beer, and when asked for a ballpark estimate, he responded that his estimate was "**not reliable, [and] should not be relied upon**." 1-SER-109 [Peacock Dep. 109:13–109:24]; 1-SER-62–63 at ¶ 5. Therefore, by his own admission, Peacock has failed to provide any reliable evidence of any other purchases of Olympia Beer he may have made during the class period.

Even if Peacock *could* offer reliable evidence of any additional purchases of Olympia Beer he made within the statutory period, he has failed to establish what portion, if any, of the amounts he paid was allegedly due to Pabst's alleged deception as to the Challenged Label Aspects. *See, e.g.*, *Tamburri v. SunTrust Mortg., Inc.*, 623 F. App'x 878, 879 (9th Cir. 2015) ("Because [the plaintiff] has presented no evidence of damages arising from any defendant's alleged misrepresentation, the district court properly granted summary judgment"). Peacock has no evidence of the alleged difference between the price he paid for Olympia Beer and the value that he received from it (*i.e.*, the alleged "price

33

premium" he paid). For example, he failed to provide any evidence of the prices of comparable beer products without the alleged misrepresentations. Peacock testified that he "[did not] recall" at "what prices other beers were being sold" during the time of the purchase reflected on the receipt he produced, and that he "[did not] recall" whether he compared any other beers to Olympia Beer before purchasing Olympia Beer. 1-SER-62–66 at ¶ 5; 1-SER-226 [Peacock Dep.116:8–21]. Peacock testified: "**I don't calculate the price premium**" because **this would take "exhaustive market research which I haven't done**," even though he has never provided any such research. 1-SER-62–66 at ¶ 5; 1-SER-224 [Peacock Dep. 114:4–14]; 1-SER-69 at ¶ 7. He otherwise could not explain or quantify the amount of the "premium" he allegedly paid. *See* 1-SER-62–66 at ¶ 5.

In sum, Peacock failed to meet his burden to prove he is entitled to restitution because he failed to provide a computation of damages in his initial disclosures as required by Rule 26 (1-SER-82; 1-SER-62–66 at ¶ 5; 1-SER-70 at ¶ 12; 1-SER-154; 1-SER-159; 1-SER-201), failed to amend or supplement his initial disclosures to provide the requisite computation despite Pabst's repeated requests (*see id.*), failed to provide this information in response to Pabst's special interrogatories and requests for production (1-SER-62–66 at ¶ 5; 1-SER-87; 1-SER-70 at ¶ 12), failed to designate any expert witness to opine on the alleged amount of restitution owed (1-SER-70–71 at ¶ 15; 1-SER-60 at ¶ 1; SER-62–66 at

34

¶ 5), refused to state the amount of any alleged price premium he paid for Olympia Beer (1-SER-224 [Peacock Dep. 114:4–14]), and testified that he "**didn't know**" how much he thinks he should have paid for Olympia Beer or how much more he paid for it based on his mistaken belief about the source of the water used to brew the beer. 1-SER-62–66 at ¶ 5; 1-SER-226–27 [Peacock Dep.116:22–117:1; 117:7–10]. Peacock admitted that he would need "exhaustive market research" to calculate the price premium, and that he had not done such research. 1-SER-62–66; 1-SER-224 [Peacock Dep. 114:4–14]. Nor has he ever provided any such research in this years-long lawsuit. 1-SER-70 at ¶ 7.

As the court noted in *Ries v. Arizona Beverages USA LLC*, where a plaintiff in an alleged false labeling case under the UCL "offer[s] not a scintilla of evidence from which a finder of fact could determine the amount of restitution [] to which plaintiffs might be entitled if th[e] case were to proceed to trial," such "failure alone provides an independent and sufficient basis to grant defendant's summary judgment." 2013 WL 1287416 at *8 (N.D. Cal. Mar. 28, 2013) (granting summary judgment and decertifying the class on this basis); *see also Victor*, 2016 WL 4502528 at *6. Pabst is entitled to summary judgment on Peacock's sole remaining UCL claim because Peacock has no evidence of economic harm or any workable restitution model to support the amount of restitution he alleges he is owed.

## III. The District Court Correctly Denied Class Certification.

### A. Peacock Lacks Standing to Seek Injunctive Relief Because He Failed to Demonstrate an Imminent Threat of Future Injury.

A Rule 23(b)(2) class can only be certified if the named plaintiff shows that he himself is subject to a likelihood of future injury. Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class. *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.").

To establish standing to seek injunctive relief, a prospective remedy, "[t]he plaintiff must demonstrate that he has suffered or is threatened with a 'concrete and particularized legal harm,' coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 (1983)). As to the second element, "he must establish a 'real and immediate threat of repeated injury." *Id.* (citations omitted). The threat of future injury "must be actual and imminent, not conjectural or hypothetical" and must be "*certainly impending* to constitute an injury for injunctive relief purposes." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Clapper v. Amnesty Int'l USA*, 568

36

U.S. 398, 409 (2013)) (emphasis in original). "[A]llegations of *possible* future injury are not sufficient." *Id.* (emphasis in original).

"Although standing may be established at the pleading stage through allegations in the complaint, the plaintiff must prove the elements of standing at each successive stage," and "standing at the time of class certification must be established by a preponderance of the evidence." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024) (citations omitted) (holding that the named plaintiff did not have standing to seek injunctive relief because the plaintiff did not submit any evidence of a future injury that was concrete and particularized); *Nelsen*, 895 F.2d at 1249–51 (affirming denial of class certification and dismissal of injunctive relief claims due to named plaintiffs' lack of standing, and stating that "[s]tanding is a jurisdictional element that must be satisfied prior to class certification," and "the burden [of] showing a likelihood of recurrence [is] firmly on the plaintiff").

Peacock ignores the reality that, as the moving party seeking class-wide injunctive relief, Peacock must affirmatively demonstrate the plausibility of an actual threat of future harm to warrant an injunction. He failed to do so. The uncontroverted evidence shows that the source of the alleged future harm has ceased because the allegedly misleading "It's the Water" slogan was removed from the Olympia Beer label in May 2020 via formal approval by the Alcohol and

37

Tobacco Tax and Trade Bureau, rendering all former versions of the label "obsolete," such that the only approved label for Olympia Beer that exists does *not* bear the challenged slogan. 2-SER-260 at ¶ 9; 2-SER-270–71. Pabst's VP of Sales unequivocally certified that "Pabst has no intention of using and *will not be using* the 'It's the Water' slogan on any packaging, labeling, advertising, or marketing material associated with Olympia Beer in the future." ER-143–44 at ¶ 5 (emphasis added); *see Pardini v. Unilever United States, Inc*., 2021 WL 8153616 at *3 (N.D. Cal. Sept. 27, 2021) (plaintiff lacked standing to seek injunctive relief because the defendant "ceased the practice of using the disputed [product] label" and no longer controlled the product's brand); *Culver v. Unilever United States, Inc.*, 2021 WL 2943937 at *5 (C.D. Cal. June 14, 2021) (plaintiff lacked standing to seek injunctive relief because the defendant stated that new labels would replace allegedly misleading ones); *Lanovaz v. Twinings N. Am., Inc*, 2016 WL 4585819 at *3 (N.D. Cal. Sept. 2, 2016) (plaintiff lacked standing to seek injunctive relief because the defendant included a declaration stating that there was no intention to resume use of the discontinued labels).

Further, Pabst discontinued production of Olympia Beer in January 2021, and Peacock has failed to rebut Pabst's evidence that Pabst made this decision because of declining sales of Olympia Beer—*i.e.* external market forces and business realities that have nothing to do with this lawsuit. ER-143 at ¶ 2 ("This

business decision was made because Pabst has been unable to find a solution to the challenges posed by reduced Olympia Beer sales. Pabst's decision was based entirely on declining demand for the beer and corresponding sales numbers and had nothing to do with this lawsuit."). As Pabst's evidence shows, this is not a situation where a defendant has temporarily paused sales of a product in light of litigation and will resume sales once the litigation is complete. *See id*.

Peacock faces no risk of future injury based on the alleged mislabeling of Olympia Beer because Peacock is now well-aware that Olympia Beer was *not* brewed with artesian spring water from Olympia, Washington, the challenged "It's the Water" slogan that allegedly led him to this mistaken belief was removed from the label and this slogan will not be used in the future to market Olympia Beer, and in any event, Olympia Beer has been discontinued and is no longer on the market. As the district court correctly determined, Peacock lacks the real and immediate threat of future injury necessary to confer standing to seek injunctive relief and there is nothing to enjoin because Olympia Beer is no longer (allegedly) mislabeled, nor even in production. ER 148–49.

Peacock's own briefing even *admits* that the harm he seeks to enjoin no longer exists. *See* ER-75 (stating that Defendant changed the Olympia Beer advertising "in a manner *that tracks the precise injunctive relief Plaintiff seeks here by eliminating the phrase 'It's the Water' from certain of its marketing*.")

39

(emphasis added); *Id.* ("Defendant has now removed its falsely advertised products from the market entirely.") (emphasis added); Op. Br. at 9 ("This lawsuit achieved its primary purpose, which was to curtail a longstanding deceptive practice by a major beer manufacturer, before removing the 125-year old brand from the market entirely."). Peacock's motion for class certification does not identify any other injunctive relief he seeks aside from the "elimination" of the "It's the Water" slogan (ER-75),[2] and the Olympia Beer label is the only specific "marketing" Peacock has challenged. ER-37 at ¶ 25; ER-70–71, 75. Accordingly, by Peacock's own admissions, there is nothing to enjoin, and he cannot certify a Rule 23(b)(2) injunctive class.

This Court examined the specific issue of a named plaintiff's standing to seek injunctive relief in an alleged mislabeling case under the UCL in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). Davidson was a putative lead plaintiff who purchased wipes labeled "flushable," though she discovered the wipes were not flushable, and brought suit under the UCL. *Id.* at 961–62. The district court found that Davidson lacked standing to seek injunctive relief because Davidson, having learned that the wipes were not actually flushable, was unlikely

---

[2] Peacock has failed to argue that the fanciful remedies sought in his Complaint's prayer for relief, such as a "corrective advertising campaign," are warranted in a labeling case of this type, particularly given that Olympia Beer is no longer in production. *See* ER-41–42.

to purchase the wipes in the future. *Id.* at 963. The Ninth Circuit reversed, and held that a previously-deceived plaintiff in a mislabeling case may still establish the risk of future harm to confer injunctive relief standing, even though they now know that the challenged advertising was (allegedly) false at the time of original purchase. *Id.* at 969. The future harm may be: (1) that the plaintiff "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"; or (2) the possibility that "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved" to match the advertising. *Id.* at 969–70.

Davidson had standing to seek injunctive relief because Kimberly-Clark continued to use the misleading "flushable" description. *Id.* at 971–72 (Davidson's allegation that she would like to purchase the Kimberly-Clark wipes in the future, but "has no way of determining whether the representation 'flushable' is in fact true,'" established standing to assert a claim for injunctive relief). Indeed, both scenarios the Ninth Circuit indicated might confer standing presume that the mislabeling is ongoing. *See id.* at 969–70; *Bruton v. Gerber Prod. Co.*, 2018 WL 1009257 at *6 (N.D. Cal. Feb. 13, 2018).

The concerns that animated *Davidson* are absent here because the allegedly deceptive "It's the Water" slogan was previously removed from the labeling and

all marketing, and Olympia Beer has been discontinued. *See Bruton*, 2018 WL 1009257 at *7 (denying certification of an injunctive relief class because the allegedly misleading labeling had ceased). Without the challenged "It's the Water" slogan, there can be no confusion about the source of the water used to brew Olympia Beer, because, per Peacock's argument, the labeling no longer indicates that Olympia Beer is brewed with specific water from Olympia, Washington. Nothing in this Court's precedent regarding standing to seek injunctive relief for alleged product mislabeling under the UCL "suggests that the Ninth Circuit created a freestanding right to seek injunctive relief based on conduct that has ended." *Id.* Accordingly, the district court correctly denied certification of a Rule 23(b)(2) class. ER-148–49.

### B. Peacock's Claim for Injunctive Relief is Moot Because There is No Reasonable Expectation of Future Harm.

Peacock now argues that Pabst's voluntary cessation of the challenged conduct does not moot his case. Op. Br. at 10–11. But even Peacock's cited authorities—which are each factually and procedurally distinguishable and generally unhelpful to his argument—clarify that a case is moot and an injunction is not warranted where "there is no reasonable expectation that the [alleged] wrong

42

will be repeated." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).[3]

Where interim events have "completely and irrevocably eradicated the effects of

the alleged violation," a case is moot. *County of Los Angeles v. Davis*, 440 U.S.

625, 631 (1979).

Whether analyzed through the lens of standing or mootness, Peacock's bid

for a class-wide injunction fails because Pabst's uncontroverted evidence

demonstrates total cessation of the challenged conduct and that the allegedly

deceptive labeling will not be used in the future. Accordingly, "there is no

reasonable expectation that the [alleged] wrong will be repeated." *W. T. Grant Co.*,

345 U.S. at 633.

Peacock's only response is the bald and misleading assertion that "Pabst

remains free to sell and deceptively advertise the Olympia brand at any time." Op.

Br. at 12. This assertion is neither reasonable nor probable in light of the

uncontroverted facts and Pabst's sworn representations, and is in any event

insufficient to show a "real and immediate threat of repeated injury" that is "actual

and imminent, not conjectural or hypothetical" and "*certainly impending* to

---

[3] *See also United States v. Est. Pres. Servs.*, 38 F. Supp. 2d 846, 856 (E.D. Cal. 1998), *aff'd*, 202 F.3d 1093 (9th Cir. 2000) (injunctive relief was appropriate where the court found the defendants had made false and fraudulent statements in connection with abusive tax shelter schemes, and the evidentiary record indicated the fraudulent conduct was "likely to recur absent the issuance of an injunction").

constitute an injury for injunctive relief purposes." *Davidson*, 889 F.3d at 967

(citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)) (emphasis in

original). Peacock's unfounded, unreasonable, and self-serving speculations

regarding "*possible* future injury are not sufficient." *Id.* (emphasis in original).

Because Peacock cannot reasonably deny the facts, he misrepresents the

record and attempts to mislead this Court by insinuating that Pabst removed

Olympia Beer from the market because of Peacock's lawsuit, an assertion for

which he has no evidence, and that is contradicted by the unrebutted facts. *See* Op.

Br., at 9–10; ER 143 at ¶ 2. Peacock also argues—incorrectly—that "[i]n response

to the District Court's order denying Pabst's motion to dismiss, Pabst changed its

advertising to track the injunctive relief sought by Peacock" and congratulates

himself for his "success" (even though he failed to provide any evidence to suggest

that the Olympia Beer label is deceptive or misleading to anyone other than

himself). Instead, Pabst initiated the label change after the district court *granted*

Pabst's initial motion to dismiss this case, and before the district court denied

Pabst's motion to dismiss the Second Amended Complaint. *See* ER-195 (ECF No.

29, August 20, 2019 Order granting Pabst's Motion to Dismiss); 2-SER-271 (May

11, 2020 approval of Olympia Beer label change); ER-195 (ECF No. 36, October

1, 2020 Order denying Pabst's motion to dismiss the Second Amended Complaint).

Peacock's attempt to claim victory for Pabst's removal of the "It's the Water" slogan only confirms that his claim for injunctive relief is moot.

Peacock's baseless and moot claim for injunctive relief would do nothing to benefit absent class members, as explained above. Peacock abandoned pursuit of monetary relief on behalf of the class, and continues to pursue class-wide injunctive relief solely to preserve a potential opportunity to seek attorney's fees, a fact which his briefing in this matter makes clear. ER-66 at n. 2 ("Plaintiff [] reserves the right to seek an award for having caused Defendant to change Defendant's practices through this litigation."), ER-75 (same). In reality, Peacock has no actual interest in obtaining class-wide injunctive relief for conduct *he could not prove was misleading or deceptive* and that has ceased and will not resume in the future. In any event, Peacock cannot use the "voluntary cessation" exception to mootness to attempt to bootstrap himself into a class-wide injunction where no threat of future injury exists.

## IV. The District Court's Order Denying Class Certification Can Be Affirmed on the Alternative Ground That Peacock Failed to Demonstrate a Class Can Be Maintained Under Ruler 23(b)(2).

Aside from the fatal issue of Peacock's lack of standing and the mootness of his claim, Peacock's attempt to certify a class under Rule 23(b)(2) fails because Peacock has not even attempted to carry his burden to demonstrate that Pabst engaged in any actionable conduct "applicable to all class members," therefore,

Peacock has failed to show that an injunction is appropriate, or that an injunction "would provide relief to each member of the class." *See* Fed. R. Civ. P. 23(b)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). As explained above, Peacock has failed to present any evidence of likelihood of deception or materiality of the Challenged Label Aspects, and has failed to rebut Pabst's own expert evidence, which affirmatively shows that consumers are *not* deceived by the Challenged Label Aspects and that the Challenged Label Aspects are *not* material to consumers' purchasing decisions. Peacock has set forth no evidence to show an injunction is warranted, and, accordingly, there can be no prospective benefit to the class from the relief sought.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in Pabst's favor and the district court's denial of class certification should be affirmed.

Respectfully submitted,

Dated: October 9, 2024

BUCHALTER
A PROFESSIONAL CORPORATION

By: */s/ Oren Bitan*
Oren Bitan

*Attorneys for Defendant and Appellee*
PABST BREWING COMPANY, LLC

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendant and Appellee PABST

BREWING COMPANY, LLC states that it is unaware of any related cases

currently pending in this Court.

Respectfully submitted,

Dated: October 9, 2024

BUCHALTER
A PROFESSIONAL CORPORATION

By: */s/ Oren Bitan*
    Oren Bitan

*Attorneys for Defendant and Appellee*
PABST BREWING COMPANY, LLC

47

## CERTIFICATE OF COMPLIANCE

This brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(f) and Ninth Circuit Rule 32-1 because this brief contains 10,941 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f).

This brief also complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because this brief has been prepared in a proportionally spaced typeface using the Microsoft Word 2016 program, a 14 point font size, and a plain, Roman typestyle.

Respectfully submitted,

Dated: October 9, 2024         BUCHALTER
A PROFESSIONAL CORPORATION

By: */s/ Oren Bitan*
      Oren Bitan

*Attorneys for Defendant and Appellee*
PABST BREWING COMPANY, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document entitled

**APPELLEE'S ANSWERING BRIEF** with the Clerk of the Court for the United

States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

All counsel in the case are registered CM/ECF users who will be served by the

appellate CM/ECF system.

I declare under penalty of perjury under the laws of the United States of

America that I am a member of the Bar of this Court making service, and this

certificate is executed on October 9, 2024, at Los Angeles, in the County of Los

Angeles, State of California.

By:  */s/ Oren Bitan*
　　　　Oren Bitan